Town of West Rutland *v.* Rutland Railway Light and Power Company.

February Term, 1923.

Present:   Watson, C. J., Powers, Taylor, Slack, and Butler, JJ.

· Opinion filed May 2, 1923.

*Street Railroads—Subsequent Statute as Part of Charter— Mandamus—When Issued Against Private Corporations— Judicial Discretion as to Issuance—Prerequisites to Issuance —Right of Municipal Officials to Repair Streets at Expense of Street Railway Does Not Preclude Mandamus—Public Service Commission—Jurisdiction—Review of Commission's Decisions—Mandamus Will Not Issue to Redress Grievances Within Authority of Commission Until It Has Had Opportunity to Act—Remedy Not Inadequate Because Commission Without Authority to Enforce Its Orders—Commission's Jurisdiction to Compel Repair of Streets Not Affected by Proviso to G. L. 5050—Brief on Motion for Reargument— Commission's Jurisdiction Over Street Repairs Not Dependent on G. L. 5267—Mixed Question of Law and Fact for the Commission—Commission Cannot Relieve Street Railway of Charter Requirements.*

1. Under G. L. 5278 (No. 86, Acts of 1894, sec. 6), G. L. Chap. 221 (now G. L. 5265-5278) became a part of the charter of a street railway company theretofore organized by special act of incorporation, and its charter must be construed to include all subsequent rights, duties, and obligations provided for in such chapter, and to exclude the rights and privileges granted by its charter inconsistent with such chapter.

2. Mandamus is an extraordinary remedy, and is only issued against private corporations to compel the performance of a public duty.

3. Mandamus issues only in the exercise of sound judicial discretion, subject to well-settled principles which have been established by the courts.

4. Where questions of grave importance concerning rights of persons who have had no opportunity to be heard are involved, although mandamus may be an appropriate remedy, the courts may in the exercise of their sound judicial discretion, refuse the writ.

5. To warrant the issue of a writ of mandamus it must appear that the relator has a clear legal right to the performance of a particular act or duty at the hands of the respondent, and that the law affords no other adequate or specific remedy to secure the enforcement thereof.

6. Mandamus will lie against a public service corporation only when it has failed to fulfil its charter obligations to the public, and no other adequate remedy has been provided or is available.

7. The provision, in the charter of a public service corporation, that upon its failure to repair the highways or streets as required by its charter, the selectmen of the town or trustees of the village through which its tracks run, on notice, may make such repairs and collect the expense thereof from the company, is not an adequate remedy for the failure to perform a public duty, and does not relieve the company of its obligations to the public or preclude the municipality from its common law remedy to obtain relief by mandamus.

8. The Public Service Commission is an administrative body of limited jurisdiction.

9. By No. 126, Acts of 1906, Sections 13, 23 (G. L. 5045, 5050), the Public Service Commission was given complete jurisdiction

over all railroads, including street railways, with ample power for proper administrative supervision.

10. While towns are charged with the duty of maintaining and keeping in repair the highways for public use, they are not the owners of the highways within their limits, and the administrative power of supervision of that portion of the highway used by a street railway, and which it was bound to keep in proper condition under its charter, is a part of the police power of the State which has been delegated to the Public Service Commission.

11. The jurisdiction of the Public Service Commission, within the proper limits of the authority conferred upon it by the Legislature, is complete and can be reviewed only in the manner provided by statute; and mandamus will not issue to redress grievances within those limits until the Commission has had an opportunity to exert its administrative function.

12. If the Public Service Commission shall determine that a street railway company has failed or neglected to observe its charter obligations respecting repairs to the streets or highways over which it passes, and conditions exist requiring certain kinds of repairs by the use of certain materials, and the facts warrant, the Commission can make all necessary orders and decrees, which the courts are vested with full powers to enforce, hence the remedy is not inadequate because the Commission is not clothed with judicial power to enforce its orders, whether the charter provides a remedy or not.

13. The special provisions of law referred to in the proviso in No. 126, Acts of 1906, Sec. 23 (now G. L. 5050), that "nothing in this section shall be construed as affecting special provisions of the law relating to anything herein contained," relate solely to the jurisdiction of the Board which is the sole subject of the section, and such proviso does not affect the jurisdiction of the Commission to compel a street railway to make repairs to a street or highway in accordance with its charter, there being no special provision of law in any way in conflict with the Commission's jurisdiction in such matters.

14. Leave to file a brief in support of a motion for reargument does not open the door to an argument on the grounds of the motion, for such a practice would turn a motion for opportunity to reargue into reargument itself.

15. The jurisdiction which the Public Service Commission has over a street railway, with respect to the provisions in its charter requiring it to keep certain portions of the streets or highways over which it runs in repair, is not conferred by G. L. 5267, which provides that in case the company fails to agree with certain municipal officials therein specified upon the location, manner of construction, or use of such railway, either party may apply to the Commission, but by other sections of the statutes.

16. A provision in the charter of a street railway, requiring it to maintain the track area "in as good condition for travel in all respects as the adjacent highway," does not necessarily require a highway of the same material as the adjacent highway, or, if of the same material, of uniform construction therewith, as the kind of highway that will answer such requirement depends upon varying conditions, including the kind and amount of travel at the particular place, which makes the question one of law and fact and no less for the Public Service Commission to determine than were it wholly a question of fact.

17. While the proviso of G. L. 5050 to the effect that "nothing in this section shall be construed as affecting special provisions of law relating to anything herein contained," does not affect the question of jurisdiction of the Public Service Commission over a street railway company as to matters in such section specified, the Commission cannot disregard the provisions of the charter of such a company with respect to the duty of the railway to maintain its track area as therein provided, but such charter requirements remain unaffected thereby.

PETITION for a writ of mandamus, preferred to the Supreme Court for Rutland County at its October Term, 1922, and heard on the petition, answer, and depositions, at its February Term, 1923. *Petition dismissed. Motion for reargument overruled.*

*Lawrence, Stafford & Bloomer,* and *L. R. Noble* for the petitioner.

Mandamus is a proper remedy to compel a public service corporation to perform its duties to the public, when said duties

are ministerial, clearly defined by its charter, and there is no other adequate remedy. *Wabash R. Co.* v. *R. R. Com. of Indiana,* 95 N. E. (Ind.) 673; *State* v. *Ogden Rapid Transit Co,* 112 Pac. (Wash.) 120; *State* v. *Milwaukee Electric Ry. & L. Co.,* 29 N. W. (Wis.) 623; *People* v. *Northern Cent. Ry. Co.,* 58 N. E. (N. Y.) 138; *State* v. *Chicago M. & N. R. R. Co.,* 79 Wis. 259; *State ex. rel. Wisconsin Tel. Co.* v *Janesville Street R. Co.,* 87 Wis. 72.

*Stickney, Sargent & Skeels* for the petitionee.

A writ of mandamus will not be granted when it would be unavailing.

*City of Benton Harbor* v. *St. Joseph's R. R. Co.,* 102 Mich. 387; *The Ohio & Mississippi Ry. Co.* v. *People,* 120 Ill. 200; *People* v. *Chicago & Alton R. R. Co.,* 55 Ill. 95; *People* v. *Lieb,* 85 Ill. 484; *People* v. *Trustees of Schools,* 86 Ill. 613; *Cristman* v. *Peck,* 90 Ill. 150; *People* v. *Hatch,* 33 Ill. 140; *Turnbull* v. *Giddings,* 95 Mich. 314; *Corby* v. *Durfee,* 96 Mich. 11; *Justice* v. *Logan Township,* 71 N. J. Law 107; *Silverthorne* v. *Warren R. R. Co.,* 33 N. J. Law 173; High on Extraordinary Remedies, par. 14; *Rice* v. *Walker,* 44 Iowa 462; *State* v. *Babcock,* 51 Vt. 576; *Kendall* v. *Aldrich,* 68 Vt. 478; *Hall* v. *Crossman,* 27 Vt. 297.

BUTLER, J.    This is a petition for mandamus to compel the petitionee to forthwith repair and surface that portion of the highway between its tracks and for a distance of two feet on each side thereof, on certain streets in the village of West Rutland, all in said town, with a concrete pavement seven inches in thickness; the concrete to be a mixture in strength of one part cement, two parts sand and four parts crushed stone; or by a paved road of equal strength, hardness, imperviability to moisture, and surface, and for other relief.    The respondent alleges in effect:

(1)    That the petitioner has a full and adequate remedy at law under the terms of the charter, which provides that upon failure to repair its tracks and the highway or street within or adjacent to the same, as required, the selectmen of the town or trustees of the village on notice may make such repairs as are required, and the town or village, as the case may be, may collect the expense thereof from the company.

(2)   That the Public Service Commission of the State of Vermont has primary and exclusive jurisdiction to determine the amount, kind and quality of repairs needed, and to make orders and decrees relating to the tracks, equipment, crossings and roadbed, and in respect to the operation of its road for the accommodation of the public.

(3)   That under its charter it is not its duty to reconstruct and rebuild its roadbed and put down new and improved pavement; but that it is its duty, only, to keep in repair the portion of the highway between its tracks and for a distance of two feet each side thereof in as good condition for travel in all respects, as was the adjacent highway at the time the charter was granted; that it is possible and practical, and the petitionee is ready and willing to keep that portion of the roadbed in as good condition for travel as required by the charter without the use of the same kind of material used by the petitioner in the reconstructing of the adjacent highway as prayed for.

(4)   That because of its financial condition the petitionee is unable to make the changes and improvements required by the petitioner without interfering with others equally necessary, and has no means which it can use for that purpose without impairing its service and depriving others of equal rights, so that the order prayed for would be inequitable and unjust and unenforceable; that its charter imposes other equal duties or obligations to the public which would be interrupted.

The Rutland Street Railway was chartered by No. 181 of the Acts of 1882.  Section 7 provides, among other things, that, "Said company shall keep the portion of the highway between its tracks, and for a distance of two feet each side thereof, in as good condition for travel in all respects as is the adjacent highway, except that it shall not be obliged to make repairs upon highway bridges; and shall so grade the surface of the street and crosswalks within and adjacent to its tracks, that persons and vehicles can conveniently cross or turn off from the same." Said section further provides that, "If said company at any time shall fail to repair its track and the highway or street within or adjacent to the same as above required * * * said selectmen or trustees may make such repairs as are required and the town or village, as the case may be, may collect the expense thereof from said company." Section 8 of the charter provides among other

things that, "Said company may regulate its rates of fare and tolls for the transportation of passengers and property" with certain restrictions.   By section 6 the company is given the right to extend the line upon the highways of the town with the consent of the selectmen.   And by section 7 to enter and occupy and use so much of the highway as shall be necessary, provided it "conform as nearly as possible to the grades which now are or hereafter may be established for such streets and highways." Section 11 provides that, "This act shall be under the control of the Legislature to repeal, alter or amend as the public good may require."   Soon after the passage of this act the Rutland Street Railway was organized under its charter, constructed its roadbed and track along the highway through the City of Rutland, the villages of Center Rutland and West Rutland all within what was then the town of Rutland, and operated its cars over its tracks by means of horse power.   Some years later, the time did not appear, it changed its motive power to electricity, rebuilt its tracks, erected pole lines, and established its trolley system.

[1]    By G. L. 5265, 5266 (No. 86 Acts of 1894, now G. L. Chap. 221) provision is made in respect to persons or corporations proposing to construct a railway and sections or portions thereof in any highway or street in this State obtaining consent of selectmen and trustees.   And G. L. 5278 provides that "The provisions of this chapter are hereby made a part of all special acts of incorporation of all street railways heretofore granted; and the provisions of all such acts of incorporation, and of all charters of cities and villages are, so far as the same may be inconsistent with the provisions of this chapter, hereby repealed." And G. L. 5267 provides that, "If such person or corporation fails to agree with the selectmen, aldermen, or trustees upon the location, manner of construction or use of such railway either party may apply to the Public Service Commission."

This chapter therefore became a part of respondent's charter, and as such must be construed to include all such subsequent rights, duties and obligations as therein provided for, and to exclude the rights and privileges granted by its charter inconsistent with said chapter.   *Burlington* v. *Traction Co.*, 70 Vt. 492, 41 Atl. 514.

By No. 218 of the Acts of 1896 the charter of the Rutland Street Railway was again amended granting to it the right to ex-

tend, construct, maintain, and operate its railway in the towns of Ira, Castleton, Fair Haven, and Poultney, with "all the rights and privileges and be subject to the same conditions and restrictions in any of the aforesaid places as granted to it or required of it in its original charter." Thereupon it extended its tracks through said towns. Under the General Laws and by virtue of numbers 303 and 304 of Acts of 1908, the Rutland Street Railway Company was merged with other corporations, including electric light, power, and gas light companies, and became, as well, a public service corporation under the name of the Rutland Railway Light and Power Company. By this Act it assumed all the duties and obligations of the Rutland Street Railway Company, and now avers that these duties and obligations it is ready and willing to perform according to the provisions of its charter. The kind, quality, extent, and necessity of the repairs required are in dispute. No question is made as to grade.

The first question then for our consideration is whether mandamus is a proper remedy, in view of the provisions of the charter that the selectmen or trustees of the village may make such repairs as are required and collect the expense of the petitionee company.

[2-5]   Mandamus is an extraordinary remedy, and is only issued against private corporations to compel the performance of a public duty. It issues only in the exercise of sound judicial discretion, subject always to well-settled principles which have been established by the courts. Where questions of grave importance concerning rights of persons who have had no opportunity to be heard are involved the courts may, although an appropriate remedy, in the exercise of that discretion, refuse the writ. Since the object of madamus is not to supersede legal remedies, but rather to supply the want of these, two prerequisites must exist to warrant its issue: First, it must appear that the relator has a clear legal right to the performance of a particular act or duty at the hands of the respondent; and, second, that the law affords no other adequate or specific remedy to secure the enforcement thereof. *Bates* v. *Keith*, 66 Vt. 163, 28 Atl. 865; *Sabine* v. *Rounds*, 50 Vt. 74; *Cook* v. *Town of Peacham*, 50 Vt. 231; High on Extraordinary Remedies, p. 15; *People ex rel. Bacon* v. *Northern Central Rd. Co.*, 164 N. Y. 289, 58 N. E. 138.

[6, 7]   It is only when the defendant has failed to fulfill its charter obligations to the public, and no other adequate remedy has been provided or is available, that mandamus will lie.   *Free Press Association* v. *Nichols,* 45 Vt. 7; High on Extraordinary Remedies, p. 12, and note; *Union Pacific Ry. Co.* v. *Hall,* 91 U. S. 343, 23 L. ed. 428.   The right of the selectmen and trustees to make repairs and collect the expense of the company is not an adequate remedy for the failure to perform a public duty.   It does not relieve the company of its obligations to the public under its charter or preclude the petitioner from its common law remedy to obtain relief.   It enables them to aid the company in the performance of its duty, but does not excuse or absolve it from that obligation.   *State* v. *Chicago M. and N. R. Co.,* 79 Wis. 259, 48 N. W. 243, 12 L. R. A. 180; *State ex rel. Wis. Tel. Co.* v. *Janesville St. Ry.,* 87 Wis. 72, 57 N. W. 970, 22 L. R. A. 759, 41 A. S. R. 23; *Burgess* v. *Chambersburg Ry.,* 258 Pa. 57, 101 Atl. 923; High on Extraordinary Remedies, § 17, p. 23.

[8]   We must next inquire whether the law has otherwise provided an adequate remedy in the first instance; for, if so, whether the defendant has performed its full duty, or is ready to perform it, must be first determined by that method.   In determining this question it will be necessary to inquire into the provisions of the charter and facts disclosed, as well as other legislative enactment, as to the extent of the powers conferred upon the Public Service Commission; for the Commission is an administrative body of limited jurisdiction, and unless, by that body or some other, adequate remedy for the breach of the legal duty complained of is provided, resort to mandamus may be had.

[9]   By section 13 of No. 126, Acts of 1906, now G. L. 5045, the Public Service Commission has general supervision of all railroads whether operated by steam or electricity or other power, and of all corporations or persons owning or operating the same so far as is necessary for it to perform the duties and exercise the powers conferred upon it.   Among other things, it provides that said Commission shall see that all railroads comply with the provisions of their charters and the laws of this State.   By section 23, now G. L. 5050, said Commission is given jurisdiction on due notice to determine, render judgment, make orders and decrees in all matters provided for in the charter of any railroad corporation, or in the statutes of this State relating to rail-

roads, respecting the several things therein mentioned, among which are included maintenance of tracks so as to accommodate the public and be operated with safety, and the regulation of tolls and rates; and by section 5049, any person or corporation that claims to be injured by the unlawful action or neglect of those in operation or management of a railroad in this State in matters over which such Commission is given jurisdiction, may commence proceedings before said Commission. That it was the purpose of the Legislature to give the Commission complete jurisdiction over all railroads, including street railways, with ample power for proper administrative supervision, is apparent. *Sabre* v. *Rutland Railroad Co.,* 86 Vt. 347, 85 Atl. 693, Ann. Cas. 1915C, 1269; *City of Barre* v. *Barre & Montpelier P. & T. Co.,* 88 Vt. 304, 92 Atl. 237.

[10]    Towns have extensive powers and are charged with the duty of maintaining and keeping in repair the highways for public use; but they are not the owners of highways within their limits. *City of Montpelier* v. *McMahon,* 85 Vt. 275, 81 Atl. 977. The administrative power of supervision of that portion of the highway which respondent is using and bound to keep in proper condition, as well as the operation of its cars, and maintenance of its tracks, like the regulation of other public utilities, is a part of the police power of the State, and this it has undertaken to delegate to the Public Service Commission. *Rutland Ry. Lt. & P. Co.,* v. *Burditt Bros.,* 94 Vt. 421, 111 Atl. 582; *Barre* v. *Barre & Mont. P. & T. Co.,* 88 Vt. 304, 92 Atl 237; *Town of Bristol* v. *Palmer,* 83 Vt. 54, 74 Atl. 332, 31 L. R. A. (N. S.) 881; *Sabre* v. *Rut. Ry. Co., supra.*

[11]    Within the proper limits of the authority conferred upon the Public Service Commission by the Legislature, its jurisdiction is complete and can be reviewed only in the manner provided by statute. Neither will mandamus issue to redress grievances within those limits until the Commission clothed by statute with authority has had an opportunity to exert its administrative function. Otherwise the diverse findings of the Commission might nullify the action of the Court and compel it to overrule itself. *Baltimore & Ohio Rd. Co.* v. *Pitcairn Coal Co.,* 215 U. S. 481, 30 Sup. Ct. 164, 54 L. ed. 292; *Texas & Pac. Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, 27 Sup. Ct. 350, 51 L. ed. 553, 9 Ann. Cas. 1075; see *Sanborn* v. *Weir,* 95 Vt. 1, 112 Atl.

228. So it is held that the Public Service Commission has primary and exclusive jurisdiction in proceedings to abolish railroad highway crossings, and the court of chancery has no power to locate highways or eliminate grade crossings, and can afford no relief when no application has been made to or denied by the Public Service Commission. *Sayers* v. *Montpelier & Wells River R. R.*, 90 Vt. 201, 97 Atl. 660, Ann. Cas. 1918B, 1050.

[12] If the Public Service Commission shall determine that the company has failed or neglected to observe its charter obligations, and conditions exist requiring certain kinds of repairs by the use of certain materials, and the facts warrant, it can make all necessary orders and decrees, and the courts are vested with full power to enforce such orders and decrees.

Want of jurisdiction of the Public Service Commission is not (nor could it well be) claimed in petitioner's brief, but it is said that the remedy is inadequate, for it is not clothed with judicial power to enforce its orders. But the mode of procedure may be prescribed through an administrative body.

That the remedy as to matters within its jurisdiction is adequate has already been determined by this Court in *George* v. *Consolidated Lt. Co.*, 87 Vt. 411, 89 Atl. 635, 52 L. R. A. (N. S.) 850, Ann. Cas. 1916C, 416, wherein it was held that the question of enforcement of its orders, decisions and judgment by process does not arise, for it is left to the courts to protect and enforce the rights of both. And in that case, the writ of prohibition, said to be a counterpart of mandamus, was dismissed on the ground that it was the right of the Public Service Commission to proceed in the matter. And it is there also held: "The functions of the Public Service Commission, and its impartial character, considered in connection with the supervisory power of the courts, render it not only eminently fit but unobjectionable on constitutional grounds that it should be entrusted with the determination of the questions which it is authorized to determine by the legislation now under consideration." *Stimets* v. *Town of Highgate*, 81 Vt. 231, 69 Atl. 878. And this is so whether the charter provides a remedy or not, for such remedy would be concurrent merely. *Central Vt. Ry. Co.* v. *State and Town of Hartford*, 82 Vt. 145, 72 Atl. 324.

The Public Service Commission having jurisdiction of all matters provided for in the charter of any railroad corporation

whether operated by steam, electricity, or other power, with power to make all necessary orders and decrees, this broad and comprehensive provision must be held to include that portion of the highway necessary for such railroad to keep in repair as well as the operation of its cars, construction, reconstruction and maintenance of its tracks, so as to be operated with safety, and the matter of tolls and rates for service, all of which are interlocked and interdependent. They necessarily depend in a large measure upon the physical conditions and public requirements, extraordinary unknown burdens, and the duty of petitionee in respect thereto. All such matters are properly, in the first instance, for the consideration and determination of the Public Service Commission.

[13] It should also be observed that the proviso in Section 23 of No. 126 of Acts of 1906, now G. L. 5050, that "nothing in this section shall be construed as affecting special provisions of the law relating to anything herein contained," has not been overlooked. Under this proviso it was held in *Barre* v. *Barre & Mont. P. & T. Co., supra,* that the franchise of the company having been granted prior thereto, together with its accepted terms and conditions, became a special provision of law, and as such was not affected by the provisions of that section. Unlike the case at bar the location was obtained by an agreement with the city of Barre, fixing the toll rate for fares and transfers, and this agreement was held lawful. This was the special provision of law referred to, from which the company could not release itself. An injunction was asked against fixing an unlawful rate in violation of a contract, which was threatened, and which the Commission had no power to prevent or permit. The special provisions of law referred to in the proviso, relate solely to the jurisdiction of the Board, which is the sole subject of the section, and there appears to be no special provision of law in any way in conflict with the jurisdiction of the Board over the matters herein involved. *Central Vt. Ry. Co.* v. *State and Town of Hartford,* 82 Vt. 145, 72 Atl. 324. In view of the foregoing holdings further consideration of the questions raised is unnecessary.

*Petition dismissed with costs.*

### ON MOTION FOR REARGUMENT.

Upon handing down the foregoing opinion the petitioner had leave to file a motion for reargument, pending which the entry of judgment is withheld.

[14]    The brief filed in support of the motion is mainly, as it expressly states, an argument of the motion, and to that extent is not such a brief as serves any good purpose.   We took occasion in *Ryan* v. *Orient Ins. Co.,* 96 Vt. 291, 119 Atl. 423, and *McAllister* v. *Benjamin,* 96 Vt. 475, 121 Atl. 263, decided at the May Term, to point out the proper function of the brief in support of such a motion.   As said in the Ryan Case, leave to file such a brief does not open the door to argument of the grounds of the motion, for such a practice would turn a motion for opportunity to reargue into re-argument itself.

[15]    Such grounds of the motion as are available (as to which see *Ryan* v. *Orient Ins. Co., supra,* and the cases there collected) challenge the correctness of the opinion in respect to two matters for separate consideration.   In various ways the claim is made that G. L. 5267, referred to in the opinion, has no application.   In this respect the motion is framed upon the mistaken theory that the decision is affected by this section of the statutes.   It is at once apparent that the jurisdiction there conferred upon the Public Service Commission has no reference to the matters here involved, and all that is said respecting that and other sections of the same chapter could be omitted from the opinion without affecting the result.   The only purpose of the reference to those sections was to call attention to the fact that certain provisions of the defendants' charter had been amended by what is now Chapter 221 of the General Laws and to show the course of legislation and policy of the Legislature with respect to similar, though disconnected, matters relating to street railways.   The jurisdiction involved here is plainly conferred by other sections of the statutes, which are made the basis of the decision.   Properly understood the opinion does not refer to G. L. 5267 as conferring upon the Commission authority to deal with the questions presented in the instant case.   No more need be said in disposing of the pertinent grounds of the motion, some seventeen in number.

[16]  In several grounds of the motion it is insisted that the Court has disregarded the petitioner's claim that the defendant's charter, as a matter of law, requires it to maintain a highway within the track area of the same kind as the adjacent highway; that the question can only be decided by the courts; and that it must be passed upon before it can be held that the Commission has any jurisdiction.   While it is not expressly stated in the opinion that these claims are unsound, such is the necessary implication.   The charter requires the defendant to keep the track area "in as good condition for travel in all respects as the adjacent highway."   The opinion in effect states that the Commission has jurisdiction to determine whether the defendant has failed or neglected to observe its charter obligations and what repairs of the track area will answer the requirements of the charter.   Manifestly, the highway required is not necessarily a highway of the same material as the adjacent highway, or, if of the same material, of uniform construction therewith.   The kind of a highway that will answer the requirement "in as good condition for travel" would depend upon varying conditions, including the kind and amount of travel at the particular place. This makes the question, one of law and fact, and not less for the Commission to determine than it would be were it wholly a question of fact, in which latter character it is in effect conceded in the motion to be primarily within the administrative competency of the Commission.   It is objected that cases cited in support of the claim are not referred to in the opinion.   Such omission should not be taken as indicating that they have not received careful attention.   The criticism illustrates the difficulty of curtailing the length of opinions and at the same time satisfying the defeated party that nothing has been overlooked.   On the customary examination of the citations it was found that they shed little if any light on the construction to be given the charter provision.   Practically all the cases are distinguished from the case at bar by the provisions of the ordinances or franchises on which they are based, the requirement usually being in effect either that the track area shall be maintained of the same material as the adjacent highway, or that materials satisfactory to the municipal authorities shall be used.  .

[17]  One ground of the motion seeks a specific holding whether the Commission would have authority to modify or re-

lieve the defendant from the requirements of the charter. There was no intimation that the Commission has any such authority. The cases referred to show clearly that the proviso of G. L. 5050, quoted at length in the opinion did not affect the ·question of jurisdiction; but it would not follow that the Commission could disregard the charter provision. On the contrary, the proviso makes it clear that the charter requirements are unaffected by anything contained in the section.

No occasion for a reargument of the case is shown.

*Motion overruled.*