TOWN OF WEST RUTLAND *v.* RUTLAND RAILWAY LIGHT AND POWER CO.

October Term, 1924.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 15, 1925.

*Street Railroads—Binding Effect of Charter Obligations—Constitutional Law—Due Process of Law Not Infringed by Enforcement of Charter Obligations—Effect of Unprofitable Operations as to Charter Obligations.*

1. Where duties and obligations of consolidated gas, electric, and street railroad company under its new charter were that it should be liable for all debts and obligations of its several constituent companies, the duties and obligations under its original charter rested upon new corporation as a whole, attaching as condition to grant of its rights under new charter, and its obligations thereunder continue during life of grant and cannot be abrogated without consent of granting power but must be discharged by use of any funds of new corporation, regardless of their source, though such use results to its financial disadvantage.

2. An acceptance of a franchise requires a compliance with all its terms, although the carrying out of such obligations may eventually result in serious financial loss to grantee of such rights.

3. Where consolidated gas, light, and electric railroad company con-

ducted its business in separate departments, the railroad only being operated at a loss and the business as a whole showing a profit, in action to compel it to perform its charter obligations respecting railroad, such corporation cannot escape such obligations, while it continues to act under its grant, on the ground that expense of that department will reduce its income below a fair rate and thereby deprive it of its property without due process of. law.

4. By accepting a charter, grantee consents to be bound by all of its provisions and conditions, and corporation cannot complain of enforcement of any of them, and to such enforcement question of taking property of corporation without compensation has no application.

5. In mandamus to compel consolidated gas, electric, and street railroad to obey order of Public Service Commission directing company to comply with its charter obligations to keep track area in good condition, although conditions have changed since such order, subsequent operations have proven increasingly unprofitable, and company has abandoned portion of line covered by order, company was not thereby absolved from its charter obligations respecting highway, and validity of Commission's order was not affected by fact that financial condition as result of further operation of railway department was unanticipated and disappointing.

PETITION for writ of mandamus to compel compliance with order of Public Service Commission, preferred to Supreme Court for Rutland County, and heard on petition, answer, and depositions, at Special Term of Supreme Court, held at Montpelier, July 15, 1925. *Writ ordered to issue.*

*Lawrence, Stafford & Bloomer* and *L. R. Noble* for the petitioner.

It is not unconstitutional confiscation to require a corporation to perform a charter duty, even though it results in loss to the corporation. *Georgia Ry. & P. Co.* v. *Decatur,* 262 U. S. 432, 438; *Milwaukee, etc.* v. *Wisconsin,* 252 U. S. 100.

Officers of public service corporation, which was created under laws of State, and is, exercising its franchise therein, are proper parties defendant in petition for mandamus to compel

corporation to comply with charter obligations, and may be compelled by mandamus to perform specific acts enjoined by law for benefit of public. *People* v. *R. & S. L. R. R. Co. et al.*, 76 N. Y. 294; *Breslauer* v *Franklin*, 205 Ill. App. 372; *Guano Co.* v. *State*, 193 Ala. 548.

*Stickney, Sargent & Skeels* and *Fenton, Wing & Morse* for the defendants.

Mandamus is an extraordinary remedy and issued only in exercise of sound judicial discretion. *Town of West Rutland* v. *Rutland Railway Light & Power Co.*, 96 Vt. 413.

When a compliance with the mandate will require the expenditure of funds, want of funds and of the means of obtaining them is ground for a denial of writ of mandamus, as its issuance would be unavailing. 18 R. C. L. 139, § 55; 26 Cyc. 362, and note 34; *State* v. *Dodge City M. & T. R. Co.*, 53 Kan. 329, 36 Pac. 755, 24 L. R. A. 564; *Benton Harbor* v. *St. Joseph & Benton Harbor St. Ry. Co.*, 102 Mich. 386, 60 N. W. 758, 47 A. S. R. 553, 26 L. R. A. 245; *Ohio & M. Ry. Co.* v. *People*, 120 Ill. 200, 11 N. E. 347.

The revenues from one branch of a consolidated gas, electric, and street railroad company cannot be taken to make up losses in the other, and such company cannot be compelled to carry on one kind of business at a loss, even though at the same time its whole business may be conducted at a profit. *Municipal Gas Co.* v. *Public Service Com.*, 225 N. Y. 89, 121 N. E. 772; *Valparaiso Lighting Co.* v. *Public Service Commission* (Ind.), 129 N. E. 13, 18; *Mt. Carmel Public Utility, etc.* v. *Public Utility Com.*, 297 Ill. 303, 130 N. E. 693, 21 A. L. R. 571; *Brooks-Scanlon Co.* v. *Railroad Com.*, 251 U. S. 396, 64 L. ed. 323; *Northern P. R. R. Co.* v *North Dakota*, 236 U. S. 588, 59 L. ed., 739; *Norfolk & W. R. Co.* v. *Conley*, 236 U. S. 607, 59 L. ed. 747.

BUTLER, J. This is a petition for writ of mandamus to compel the respondent to comply with an order of the Public Service Commission made by virtue of the jurisdiction referred to in *Town of West Rutland* v. *Rutland Ry. L. & P. Co.*, 96 Vt. 413, 121 Atl. 755. The validity of the order is not disputed; nor is it denied that the enforcement of such orders is left to this Court by No. 92, Acts of 1923. That the defendant has dis-

obeyed the order by failing to comply with it is conceded. Ordinarily, when properly applied for, a mandate to enforce such an order would issue almost as a matter of course, but the statute under which we are called upon to act expressly declares that we shall "make such orders and decrees * * * by way of writ of mandamus, writ of prohibition, injunction, or otherwise, * * * as to law and equity shall appertain." Section 3. The defendant insists that the circumstances here are such that it would be both unlawful and inequitable to enforce this order.

The defendant answered the petition, and evidence has been taken pursuant to an order for that purpose.

The material facts relied upon in defense briefly stated, are as follows: The defendant's business is conducted in three departments: gas, electricity, and railroad; the accounts of these departments are separately kept; its railroad operations have been progressively unprofitable until the time has come when it has no means derived from that department with which to do the work required by the order in question, which work will cost upwards of $12,000; in this situation, the defendant has discontinued the operation of its road on the streets covered by the order, and thence on to the village of Fair Haven. The other departments of the defendant's business are profitable—so much so that the 5 per cent. interest on its bonds of about $2,000,000 has been paid, and the 7 per cent. dividend on its preferred stock of over $100,000 has been regularly paid; the last payment having been made on July 1, 1924, which was since these enforcement proceedings were begun.

By the original charter of the Rutland Street Railway Company, No. 181, Acts 1882, § 7, that company was required to "keep the portion of the highway between its tracks, and for a distance of two feet on each side thereof, in as good condition for travel in all respects as the adjacent highway." It is to enforce this provision that the order in question was made.

[1] The duties and obligations which the defendant company assumed with respect to the Railroad Company by its charter were co-extensive with the duties and obligations resting upon that Company prior to consolidation; for the terms of the new charter are "it [defendant] shall be liable for all debts and obligations of said several constituent companies." No. 303, Acts of 1908, § 3. Thus the obligation of the original charter above quoted became a charter obligation of the consolidated

company.  The duties and obligations so imposed, being charter duties and obligations, rested upon the new corporation as a whole.  They attached as a condition to the grant of its rights under that charter, and its obligations thereunder are continuous during the life of the grant and cannot be abrogated without the consent of the granting power.  *City of Burlington* v. *Burlington Traction Co.*, 98 Vt. 24, 124 Atl. 857.  They must be discharged by the use of any funds of the defendant, regardless of their source, though such use results to the defendant's financial disadvantage.

[2]   It is uniformly held that an acceptance of the franchise requires a compliance with all its terms although the carrying out of such obligations may eventually result in serious financial loss to the grantee of the rights.

"It is true," says Mr. Justice Holmes in *Brooks-Scanlon Co.* v. *Railroad Commission*, 251 U. S. 396, 64 L. ed. 323, 40 Sup. Ct. 183, "that, if a railroad continues to exercise the power conferred upon it by a charter from a state, the state may require it to fulfil an obligation imposed by the charter, even though fulfilment in that particular may cause loss."

If a railroad company agrees to do certain things in consideration of the rights given to construct its lines, it must perform as stipulated or suffer the consequences of its failure to do so. *Norristown* v. *Reading Tr. & Lt. Co.*, 277 Pa. 459, 121 Atl. 495; *Alleghany* v. *Millville E. & S. St. Ry. Co.*, 159 Pa. 411, 28 Atl. 202; *Swarthmore* v. *Philadelphia Rapid Transit Co.*, 280 Pa. 79, 124 Atl. 343, 33 A. L. R. 128.

[3]   The defendant relies upon the oft-recognized doctrine that when a corporation is required by any act or proceeding to devote to the public use its property without compensation it is thereby deprived of it without due process of law; and it insists that when a public utility corporation is engaged in furnishing the public through various departments of its business different kinds of services, it cannot be compelled to carry on any branch of its business at a loss, even though at the same time its whole business be conducted at a profit.  But this doctrine is inapplicable here, for this is not a proceeding to require the railroad company to continue services at the expense of its other departments, but rather to require it to perform its charter obligations. This corporation cannot escape such obligations, while it continues to act under its grant, on the ground that the expense will

reduce its income below a fair rate. *Missouri Pac., etc., R. R. Co.* v. *Kansas,* 216 U. S. 262, 276, 54 L. ed. 472, 30 Sup. Ct. 330; *Milwaukee Electric R. R. Co.* v. *Milwaukee,* 252 U. S. 101, 64 L. ed. 476, 40 Sup. Ct. 306, 10 A. L. R. 892; *Georgia Ry. & P. Co.* v. *Decatur,* 262 U. S. 432; 67 L. ed. 1065, 43 Sup. Ct. 613; *Southern Iowa Electric Co.* v. *Chariton,* 255 U. S. 539, 65 L. ed. 764, 44 Sup. Ct. 400; *Paducah* v. *Paducah Ry. Co.,* 261 U. S. 267, 67 L. ed. 647, 43 Sup. Ct. 335; *Railroad Com. of Texas* v. *Eastern Texas R. R. Co.,* 264 U. S. 79, 68 L. ed. 569, 44 Sup. Ct. 247.

[4]  The rule established by the cases cited is that by accepting a charter, the grantee consents to be bound by all of its provisions and conditions, and the corporation cannot complain of the enforcement of any of them. To the enforcement of these, the question of taking the property of the corporation without compensation does not apply. If this were not so, a corporate charter, as was said in *Missouri P., etc., R. R. Co.* v. *Kansas, supra,* would be "* * * purely unilateral, that is * * * binding in favor of the corporation as to all rights conferred upon it, and * * * devoid of obligation as to duties imposed * * *."

Since the time the order was made a radical change has taken place in the conditions which then existed, in that, while the income for the first seven months of 1923 was $10,892.77, the result of operation for the first six months of 1924 shows a deficit of $3,320.15. Its entire railroad is in bad physical condition for want of means to keep it in repair and operate with safety; and it has become apparent that all of its lines, in view of the great increase of other facilities for transportation, cannot be operated at a profit; on June 30, 1924, the respondent gave notice that on July 7, 1924, the operation of its railroad over said streets would be discontinued, and subsequently ceased its operation thereon as above stated.

[5]  If it may lawfully do this, as to which we here express no opinion, it can avail the defendant nothing, for it would not absolve it from its charter obligation to put the highway in the condition in which it was required by its charter to be kept. It had the benefit of its charter rights and must answer for its omission of corresponding charter obligations. It became the primary duty of the respondent to proceed at once with the performance of the order in question. That the financial condition as a result

of further operation of the railway department was unantici-pated and disappointing does not affect the validity of the order. When the order became final it was the duty of the company to begin performance. But it appears that the defendant applied to the Public Service Commission to be relieved from the order in question by reason of its financial condition, and to be allowed to discontinue the operation of its railroad upon the streets in question and as far as Fair Haven. This application was denied by the Commission for want of jurisdiction. The question here made was considered in disposing of the defendant's appeal therefrom. *Rutland Ry. Lt. & Pr. Co.* v. *Town of West Rutland,* 98 Vt. 385, 127 Atl. 882.

*Let a writ of mandamus issue commanding the defendants to perform, without delay, the order of the Public Service Commission here in question. Let the petitioner recover its costs.*

NOTE:—Before issuing mandate but after filing thereof, it appearing that the matters involved therein, had been adjusted by the parties, no mandate issued.